IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JERRY LYNN KING ) | |
| ID# 1468270 ) | |
| Petitioner, ) | |
| vs. ) | No. 3:10-CV-0417-N (BH) |
| ) | |
| RICK THALER, Director, ) | |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
| Respondent. ) | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

## I. BACKGROUND

On February 24, 2010, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his Ellis County conviction for failure to register as a sex offender in cause 31913CR. Respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual and Procedural History

On May 17, 2007, the State indicted petitioner for failing to register as a sex offender, enhanced by two prior felony convictions for burglary and felony DWI. (State Habeas Transcript (S.H.Tr.), p. 2). He pled not guilty and was tried before a jury on September 26, 2007. The jury found him guilty and sentenced him to life imprisonment. (R. 5:30; R. 6:128).

The state appellate court recounted the evidence presented at trial as follows:

> Because of King's two reportable convictions for aggravated rape, he was required to register as a sex offender with the Ellis County Sheriff every ninety days. *See* Penal Code, 63rd Leg., R.S., ch. 883, § 1, sec. 21.03(a), 1973 Tex. Gen. Laws 883, 916 (amended 1981) (repealed 1983) (current version at TEX. PENAL CODE ANN. § 22.021(a) (Vernon Supp. 2007)). When Deputy Steve McKinney became the sheriff's deputy responsible for registering sex offenders

for Ellis County, he orally went over the registration requirements again with all of the county's registrants and gave them written notice of the requirements; and they, including King, signed acknowledgments that they had received and understood the requirements. *See* TEX. CODE CRIM. PROC. ANN. art 62.051(b)-(d) (Vernon 2006). King testified that he knew the registration requirements.

King last registered on October 3, 2006. When King then registered, he stated his residence as an address on East Pecan Tree Road, a trailer home outside the city limits of Waxahachie, in Ellis County. The ninetieth day thereafter was January 1, 2007. On January 1, 2007, Deputy Amy Ellison became the sheriff's deputy responsible for registering sex offenders.

The ninetieth-eighth day, the last day on which King could register in compliance with the registration requirements, after King had last registered was January 9, 2007. Deputies McKinney and Ellison testified that King had not contacted them to register. Deputy Ellison first became aware of King when King's parole officer contacted her to tell her of a warrant for King's arrest for a violation of parole requirements. By the time of King's arrest in February, 2007, he had not registered.

King testified that he was not certain that he had attempted to contact the sheriff's office to register. King testified that he decided not to report to the sheriff's office because he knew that he would be arrested for the parole violation if he reported. In order to avoid sheriff's deputies, King was moving his possessions out of his residence on Pecan Tree Road and into a storage locker by night, and sleeping in the storage locker by day. When a deputy sheriff attempting to execute the arrest warrant on King did find him on Pecan Tree Road, King gave the deputy a false name and date of birth. King told that deputy that the "next time when [King] g[o]t [] out . . .they'd never find him again." (4 R.R. at 55).

*King v. State*, No. 10-07-00329-CR, slip op. at 3-4 (Tex. App.–Waco, May 29, 2008, pet. ref'd).

On direct appeal, petitioner alleged that the evidence was legally insufficient to support his conviction and that trial court erred in admitting evidence at the punishment phase regarding methamphetamine and marijuana found at his residence. Petitioner's conviction was affirmed on direct appeal. His petition for discretionary review was refused on November 26, 2008. *See* PD-

2

824-08. On November 17, 2009, petitioner filed a state habeas application alleging the same grounds for relief as in his federal petition. (S.H.Tr.:69, 74-84). On January 13, 2010, the Court of Criminal Appeals denied relief without written order. (S.H.Tr.:cover).

On February 14, 2010, petitioner mailed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9). Respondent filed a response on July 2, 2010, and provided the state court records. Petitioner filed a reply brief on August 26, 2010.

**B. Substantive Issues**

Petitioner claims that: 1) the trial court erred by admitting evidence of an extraneous offense at punishment; 2) the prosecution knowingly presented false evidence and made false statements and prejudicial statements during closing arguments at the punishment phase of the trial; 3) his life sentence constitutes cruel and unusual punishment; 4) his trial and appellate attorneys were ineffective. Respondent does not contend that petitioner failed to exhaust any of his claims.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Here, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). With respect to the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). A state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The

4

resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. TRIAL ERROR

Petitioner contends that the trial court erred by admitting at the punishment phase, over defense counsel's objections, evidence that methamphetamine and marijuana were found during a search of his house on January 2, 2007, when he was not present. Ground 4, Memorandum (Mem.) at 38-49).

In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Trial error entitles a petitioner to federal habeas relief only if it had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999). Petitioner must show that the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Under 37.07 § 3(a)(1) of the Texas Code of Criminal Procedure , "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act" is admissible at punishment. *See* TEX. CODE CRIM. PROC. ANN. 37.07 § 3(a)(1) (Vernon 2007). Petitioner raised this issue on direct appeal and in his PDR, and the Tenth Court of Appeals ruled that evidence that petitioner possessed methamphetamine and marijuana in his house was properly admitted at the punishment phase of the trial under state law because there were sufficient affirmative links between petitioner and the illegal drugs even though he was not present. *King*, slip op. at 2-4. The drugs and

drug paraphernalia were found in his bedroom, documents addressed to and belonging to petitioner were also found in the home, and he had the right of possession of the home. *Id.*

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Petitioner has not shown that the state courts erred in their determination of state law or any state trial error that warrants a harmless error review.

## IV. PROSECUTION ERROR

Petitioner contends that the prosecution committed error by presenting false testimony at the punishment phase of the trial of a sheriff's deputy that no one else had been arrested for possession of the drugs found in his home. He also contends that the prosecutor misstated his mother's testimony and his criminal history during closing arguments when she said that petitioner had been sent to the penitentiary three times instead of two. He also argues that her statements that he was a serial rapist were prejudicial. (Ground 9, Pet. at 7B; Mem. at 51-59, 76-79).[1]

The Supreme Court has held that the presentation at trial of false evidence and the admission of false evidence that although not solicited, is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: 1) the testimony

---

[1] Respondent asserts that these grounds are procedurally barred because they were not raised on direct appeal as required under state law. No findings were made by the state habeas court on any procedural bar, however, and the Court of Criminal Appeals denied relief without adopting any findings. (S.H.Tr.:cover).

was actually false; 2) the prosecution knew it was false; and 3) it was material. *Napue v. Illinois*, 360 U.S. at 271. Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271.

Petitioner contends that an officer's testimony that no one was arrested at his home for drug possession on the day the search warrant was executed was false because documents reflect that one person there was arrested on a burglary of a building charge from Dallas County (Mem., Ex. 5), and minors who were present were also arrested and released to guardians. Petitioner has not shown that the testimony was false or that it was material; he has not shown a reasonable likelihood that the jury's decision would have been affected by this testimony. Likewise, he has failed to show that any misstatements by the prosecutor during closing arguments about his criminal history had any reasonable likelihood of affecting his sentence. The prosecutor correctly stated petitioner's previous convictions, and he acknowledged at the guilt phase that he had served over twenty-one years in prison and had also been on parole or probation since 1975. (R. 4:86). The prosecutor's statements regarding petitioner being a serial rapist were pleas for law enforcement, a permissible area of jury argument under Texas law. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996). Petitioner was convicted of one charge of aggravated sexual abuse and two charges of aggravated rape, committed on June 9, 1979, August 11, 1979, and September 1, 1979, respectively. (R. 7:State's Ex. 5). Petitioner has not shown that the prosecution erred.

## V. CRUEL AND UNUSUAL PUNISHMENT

Petitioner also claims that his sentence is unconstitutionally cruel and unusual punishment because his life sentence exceeds the maximum sentenced that the legislature intended, and because

the sex offender registration requirement is civil rather than criminal in nature. (Ground 8, Pet. at 7B; Mem. at 72-73).

While sex offender registration has been held to be non-punitive and civil in nature, *Smith v. Doe*, 538 U.S. 84, 103-04 (2003); *Rieck v. Cockrell*, 321 F.3d 487, 488 (5th Cir. 2003), the failure to register is a criminal offense under Texas law. Moreover, petitioner faced a sentence between twenty-five years and life imprisonment because the State alleged and proved at punishment that in addition to not registering as a sex offender, he had previously been convicted of two felonies, thereby elevating his punishment to that of a habitual offender. TEX. PENAL CODE ANN. § 12.42(d) (Vernon 2007).

The Supreme Court has clearly established that the Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits "sentences for terms of years" that are "grossly disproportionate" to the offense. *See Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). Although the "gross disproportionality principle" is clearly established, its "precise contours . . . are unclear" and "applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73. In assessing the proportionality of the sentence, the courts "first address the gravity of the offense compared to the harshness of the penalty." *Ewing v. California*, 538 U.S. 11, 28 (2003).

Given his history of felony offenses and the fact that his punishment did not exceed the statutory maximum punishment intended by the legislature, petitioner has not shown that his case is that rare or extreme case where the sentence he received constitutes cruel and unusual punishment.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner also claims that his attorney was ineffective because he failed to: 1) do an adequate pre-trial investigation (ground ten); 2) exercise peremptory challenges to strike biased jurors (ground one); 3) stipulate that petitioner had prior sexual assault offenses which required that he register as

a sex offender (ground two); 4) seek the suppression of a statement petitioner made when he was arrested (ground three); 5) object to the admission into evidence of a photograph of petitioner at punishment (ground five); 6) investigate whether consent to search was properly obtained and failed to object to the search warrant (ground eleven); 7) properly move to exclude evidence of an extraneous offense (ground eleven); 8) request a jury instruction on the exclusionary rule (ground eleven); 9) object to false statements made by the prosecution (ground four); and 10) object that the Texas sex offender registration law is an impermissible *ex post facto* law (ground seven).

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have

been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot show it with speculation, conjecture or conclusory allegations. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

A.  **Pre-trial Investigation**

Petitioner claims that if his trial attorney had conducted an appropriate pre-trial investigation, he would have been familiar with the evidence the State presented at trial, could have determined whether anyone present at petitioner's house when drugs were seized had been arrested for possession or had previous drug offenses, and would have discovered another case where an Ellis County resident had difficulty contacting officials to register as a sex offender. (Mem. at 81-83).[2]

In support of his claim that his attorney was unaware of police reports that were referred to during trial, petitioner points to a place in the record where his attorney asked an officer to look at the report that he was referencing. (R. 4:57). This does not indicate that counsel was unaware of the contents of the report, and petitioner has not shown how this prejudiced him. The police report was about the day petitioner was arrested on a parole violation, and he has failed to allege or show that greater knowledge about this report would have had an effect on the punishment he received.

In support of his claim that his attorney failed to investigate whether anyone was arrested at his home and whether anyone present had previous drug offenses, petitioner refers to evidence that Benjamin Coody was arrested on a burglary charge out of Dallas County and evidently had a previous drug conviction. (Mem., Ex. 4 & 5). Petitioner has not shown how this information would

---

[2] Petitioner also contends that his attorney was ineffective for failing to obtain statements from certain people concerning the day that petitioner's home was searched and illegal drugs were seized. This claim will be addressed with petitioner's claims that counsel was ineffective by not investigating the search of the home and for failing to properly move to exclude the seized evidence.

10

have been relevant. Coody was not charged with drug possession based on evidence seized from petitioner's home that day. Even if he had been, his arrest would not necessarily have shown that petitioner was not guilty of drug possession. There was substantial evidence presented at trial that petitioner used illegal drugs. Petitioner and his parole officer both testified that before his arrest, petitioner had tested positive for using illegal drugs and had twice within the previous year been sent to ninety-day treatment programs for either using drugs or missing his required treatment sessions. His parole officer also testified that petitioner used methamphetamine and marijuana, the two drugs found at his home. (R. 4:85, 91, 93; R. 6:21-29).

Finally, petitioner points to a published opinion about another defendant who was convicted for failing to register as a sex offender in Ellis County. Petitioner has failed to establish that his attorney was unaware of this opinion, and it does not support his claims. The opinion mentions that the defendant claimed he could not reach anyone by telephone to make an appointment to register as a sex offender, a defense petitioner attempted to use at trial. The defendant was convicted and the conviction was upheld on appeal because he was aware of how to register in person as required and failed to do so, just like petitioner. (Mem., Ex. 17). Petitioner has failed to establish a reasonable probability that he would not have been convicted based on this opinion. His pretrial investigation claims are without merit.

**B.**     **Peremptory Challenges**

Petitioner next contends that his attorney was ineffective for failing to exercise peremptory challenges against certain jurors who served on his jury. Petitioner also appears to assert that his attorney forfeited his right to exercise peremptory challenges. (Mem. at 10-14).

The record reflects that petitioner's attorney exercised all ten peremptory challenges given to him under state law to excuse ten members of the jury panel. (S.H.Tr.:36). While petitioner

11

asserts that certain members of the jury were not impartial because they either had friends or family in law enforcement or had been or knew a victim of crime, the record reflects that the jurors stated this would not affect their service if chosen. (R. 3:96-97, 108-09, 119, 120-22, 125-27). Petitioner has not shown that his attorney was ineffective for making the choices he made with respect to the limited number of peremptory challenges he was given and has therefore not met the *Strickland* standard with regard to this claim.

C.      **Failure to Stipulate**

Petitioner next claims that if his trial attorney had stipulated to the fact that his two prior convictions for aggravated rape were violent sexual crimes which required him to register as a sex offender in Texas, the prosecutor would not have read the indictment reciting his prior aggravated rape convictions into evidence at the guilt phase of the trial. (Mem. at 16, 18-19). The prosecutor would also not have questioned a witness about whether these convictions were the ones that required registration as a sex offender. *Id.* Petitioner claims that the jury's knowledge of his prior convictions prejudiced him. (Mem. at 20-22).

Petitioner has not shown that the State would have agreed to a stipulation. Even if it had, petitioner has not shown that there is a reasonable probability that the result of the trial would have been different if the jury had told that he had been convicted twice for violent sexual offenses, which under Texas law triggers the requirement that he register as a sex offender every ninety days,[3] instead of being told that he had been convicted of aggravated rape. Petitioner testified at the guilt phase and was questioned about his sexual assault convictions on cross-examination. He acknowledged that he had been convicted of three sexual assault offenses that occurred in July,

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 62.058(a) (Vernon 2005).

12

August, and September of 1979, and that he "was a really disturbed individual" at that point in his life. (R. 4:76-77). Petitioner has not shown that his suggested stipulation had a reasonable probability of affecting either his conviction or punishment. He has failed to meet the *Strickland* standard.

D.     **Failure to File Motion to Suppress**

Petitioner claims that his attorney should have filed a motion to suppress petitioner's statement to an officer that arrested him on January 29, 2007, that they would not find him the next time they came to look for him. (Mem. at 24-27).

As recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment's "prohibition against compelled self-incrimination require[s] that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). *Miranda* "and its progeny in th[e United States Supreme] Court govern the admissibility of statements made during custodial interrogation in both state and federal courts." *Dickerson v. United States*, 530 U.S. 428, 432 (2000).

The facts presented at trial during the guilt phase indicate that petitioner's statements did not result from custodial interrogation. Officer Ed Santos testified that petitioner initially identified himself by his brother's name. After parole officers arrived and identified him, while in the back of the police car, he became "upset" and "irate" and stated that he was going to his uncle's house in Corsicana where he had intended to hide out for five years, and that next time they would not find him. (R. 4:55-57). Santos testified that petitioner made these statements of his own volition. *Id*. During his testimony, petitioner initially denied making the statement and then acknowledged that he was mad at the time and that it "might have come out" of his mouth. (R. 4:89-90). There is no

13

evidence in the record that petitioner made these statements in response to any interrogation by Officer Santos. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Counsel was not ineffective for failing to file a meritless motion to suppress.

**E.     Failure to Object**

Petitioner claims that his attorney failed to object to the admission into evidence of a photograph of petitioner that was found during the search of his home in January 2007. Petitioner argues that the failure to object to this evidence waived on direct appeal the issue of the admission of drugs at his trial. (Mem. at 61-62).

The court of appeals did not rule that error had been waived regarding the admission of drugs found in petitioner's home; it stated that it would assume that any evidence seized from petitioner's home that was admitted without objection would not cure any error in the admission of evidence to which petitioner's attorney did object. *See King*, slip op. at 3-4, n. 4. Counsel's failure to object to the admission into evidence of a photograph of petitioner found in his home therefore did not prejudice his appeal of the admission of the drug evidence. Petitioner has failed to meet the second prong of the *Strickland* standard as to this claim.

**F.     Search of Petitioner's Home**

Petitioner next contends that his attorney failed to investigate whether consent to search his home was given and whether the search warrant obtained by the officers to search his home was proper. (Mem. at 92-97). Petitioner points to a police report stating that petitioner's son informed the officers that no one was allowed in petitioner's bedroom and to his son's affidavit stating that consent was not given for the officers to enter the home. Petitioner also claims that counsel failed to investigate and object to the portion of the search warrant stating that methamphetamine was in plain sight and to investigate whether the search was made prior to the issuance of a search warrant.

He relies on affidavits from his son and his mother. (Mem., Ex. 7 & 8).

The State presented testimony at the punishment phase of the trial from a lieutenant with the sheriff's department that upon arriving at petitioner's residence on January 2, 2007, after receiving an anonymous tip that narcotics were being sold at the home, the officers received permission to enter the residence from the occupants, including petitioner's son and Benjamin Coody, who stated that he lived there. (R. 6:31-33, 45). Once they entered, the lieutenant noticed the strong odor of marijuana, saw a partially smoked marijuana cigarette, obtained consent to clear the residence of people, saw methamphetamine in plain view on a dresser, and later obtained a search warrant to seize illegal drugs. (R. 6:34-35). When the lieutenant received a call that the warrant had been obtained, officers began a systematic search of the residence. (R. 6:36).

To show prejudice within the meaning of *Strickland* when the alleged deficiency relates to a Fourth Amendment claim, petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Petitioner has not made this showing. Petitioner provides an affidavit from his son in support of his claim that his attorney should have investigated and discovered that consent was not given to enter petitioner's home. He has not shown that this information was available and provided to defense counsel, however. To the extent that petitioner contends that his son should have been called as a witness, the Fifth Circuit has held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). Because petitioner has neither shown that this information was available to defense counsel and that petitioner's son would have testified to this

15

effect, counsel cannot be deemed ineffective for failing to investigate and discover this information. Moreover, based on the officer's testimony provided that consent was given, petitioner has failed to show any prejudice because he has not shown that evidence of the drugs seized from the home would have been excluded had his son testified.

Petitioner likewise has failed to present evidence that his attorney was ineffective for failing to investigate whether the methamphetamine was found in plain sight and whether the search warrant was issued before the search was conducted because he has presented no evidence to contradict the testimony of the officers at trial. While petitioner points to affidavits from petitioner's son and mother that they never saw a search warrant, this is not evidence that one was not obtained. There was testimony at trial that the search began after the officers received word by telephone that the warrant had been obtained. Petitioner has therefore failed to meet the *Strickland* standard with regard to these claims.

### G.  Exclusion of Extraneous Offense

Petitioner next contends that his attorney failed to move to exclude the drug evidence on grounds that it was obtained in violation of the Fourth Amendment. He claims the attorney should have filed a motion to suppress and called Benjamin Coody, petitioner's son, and petitioner's mother as witnesses to establish that the officers did not have consent to enter the house and to testify that others in that home were arrested on the day that home was searched. (Mem. at 84-92).

As noted earlier, petitioner submitted an affidavit from his son stating that the officers did not obtain consent to enter the house. He has also submitted an affidavit from his mother, who was not present when the search occurred. To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed

16

testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F3d at 538. Neither of the affidavits petitioner has submitted state that the witnesses would have been available and willing to testify. Petitioner's mother was not a fact witness with respect to the search, and petitioner has submitted no affidavit from Coody showing that his testimony would have been favorable to the defense. Petitioner has not shown that any others were arrested for drug possession. The affidavits reflect that petitioner's son and the other minors were released to the custody of adults (Mem., Ex. 7, 8), and the record reflects that Mr. Coody was arrested on a burglary charge out of Dallas County. (Mem., Ex. 5). Petitioner has not shown that his attorney was ineffective for failing to file a motion to suppress.

With regard to petitioner's general assertion that his attorney did not attempt to have evidence of drug possession excluded from the trial, counsel made numerous objections to the admission of all drug evidence and paraphernalia on the basis that it had not been sufficiently linked to petitioner. (R. 6:39-40, 41, 53, 55. 60, 61, 62, 75). Trial counsel was not ineffective in this regard.

## H.     Failure to Request Jury Instruction

Petitioner next contends that his attorney should have requested a jury instruction on the issue of whether the drugs at his home were seized in violation of his constitutional rights pursuant to Article 38.23 of the Texas Code of Criminal Procedure. (Mem. at 97-98).

Article 38.23 provides that no evidence obtained in violation of the Constitution or state laws shall be admitted into evidence at a criminal trial, and that if the evidence raises this issue, the jury shall be instructed that if it believes or has a reasonable doubt that the evidence was obtained in violation of this state law, it shall disregard any such evidence so obtained. Article 38.23 further states an exception to the requirements of the article for evidence seized by a law enforcement officer acting in good faith reliance on a search warrant issued by a neutral magistrate based on

17

probable cause. TEX. CODE CRIM. PROC. ANN. art 38.23 (a),(b) (Vernon 1987).

Here, the drug evidence seized by officers from petitioner's home was seized pursuant to a search warrant issued by a magistrate based on probable cause. (R. 7:State's Ex. 35). Petitioner has therefore not shown that there was any basis under which trial counsel could have requested a jury instruction under this provision of state law. Counsel attorney was not ineffective for failing to make a meritless request for a jury instruction.

**I.** **Failure to Object to Statements by Prosecutor**

Petitioner contends that his attorney was ineffective for failing to object to false statements by the prosecution at the punishment phase of the trial. (Mem. at 38). Because the Court has already found that the prosecution did not present materially false testimony at trial, trial counsel was not ineffective for failing to make meritless objections.

**J.** **Ex Post Facto Law**

Petitioner also contends that his attorney failed to object that his constitutional rights were being violated because the offense with which he was charged was an impermissible ex post facto law that was not in existence when he was convicted of sexual assaults. (Mem. at 65-71).

The Supreme Court has held that a sex offender statute intended for non-punitive purposes is not an impermissible ex post facto law. *Smith v. Doe*, 538 U.S. 84 (2003). Both the Fifth Circuit and the Court of Criminal Appeals have held that sex offender registration statutes like the one in Texas do not have an intent that is punitive in nature and instead serve important non-punitive goals. *See Rieck v. Cockrell*, 321 F.3d 487, 488 (5th Cir. 2003); *Rodriguez v. State*, 93 S.W.3d 60, 79 (Tex. Crim. App. 2002). Because these cases make clear that the Texas sex offender registration statute is not an impermissible ex post facto law, petitioner's trial counsel was not ineffective for failing to make this objection.

## VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Finally, petitioner contends that his appellate counsel was ineffective because he failed to file a merits brief raising the issues he raised in his state writ and his federal habeas petition. (Ground Six, Pet. at 7a; Mem. at 63-64).

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[T]he decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). Courts must consider whether an issue "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Petitioner contends that his attorney was ineffective on direct appeal for failing to raise the claims that he has raised in his federal habeas petition. These claims have been found to lack merit. Counsel was therefore not ineffective on appeal. *See United States v. Phillips*, 210 F.3d 345, 348

(5th Cir. 2000) (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).

## VIII. EVIDENTIARY HEARING

Upon review of the filings and the proceedings in state court, as reflected in the state court records, an evidentiary hearing appears unnecessary.

## IX. RECOMMENDATION

The state habeas court denied petitioner's claims on their merits. (S.H.Tr.:cover). This denial is not contrary to federal law. The Court should therefore **DENY** with prejudice the request for habeas corpus relief under 28 U.S.C. § 2254.

**SIGNED on this 16th day of October, 2010.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE